## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**YUTICO BRILEY**                                        **CIVIL ACTION**

**VERSUS**                                               **NO. 18-10620**

**JASON KENT, WARDEN**                                   **SECTION "J" (2)**

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.   FACTUAL BACKGROUND

The petitioner, Yutico Briley, is a convicted inmate currently incarcerated in the Dixon Correctional Institute in Jackson, Louisiana.[2] On January 11, 2013, Briley was charged by bill of information in Orleans Parish with one count of armed robbery, one

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2] Rec. Doc. No. 1.

count of possession of a weapon by a convicted felon and one count of resisting a police

officer.[3] The Louisiana Fourth Circuit Court of Appeal summarized the facts established

at trial:

> On November 27, 2012, at approximately 2:15 a.m., Benjamin Joseph ("victim") was returning to his home at 304 South Cortez Street after working as a sound recording engineer. As he exited his vehicle, he was approached at gun point by two young black males. He was robbed at gun point of his wallet which contained around $102.00 in cash. The perpetrators attempted to take his cell phone, but he threw it to the ground. After the perpetrators fled, the victim put his cell phone back together and called 911 and reported the incident.

> Later that afternoon, Detective Kellie Morel took over the investigation of the incident. She spoke to the victim who gave her a detailed description of the perpetrators. The victim described the perpetrator with the gun as a seventeen to nineteen year old male, "slim build, medium complexion, low hairstyle," and approximately five feet ten inches tall and wearing a gray hoodie-style pullover sweatshirt. He described the gun used in the robbery as a semi-automatic, black and silver pistol. He described the second perpetrator as approximately five feet eight inches tall and wearing a blue and white striped shirt.

> On the evening of November 27, 2012, Officer Shelton Abram and Officer Jason Berger were assigned to proactive duty on the Task Force Unit, a unit that proactively looked for guns, drugs, violent offenders, and hot calls in progress. At approximately 5:25 p.m., they reported to work and were briefed on pertinent activity that had occurred in the district before their shift had started. They were alerted that an armed robbery had occurred around 2:00 a.m. that morning on South Cortez Street, and were provided with a description of the suspects. One of the suspects was described as a black male clad in a gray hooded sweatshirt and armed with a black and silver handgun. Officer Abram and Officer Berger observed a suspect in the 600 Block of South Pierce Street, who matched the description and was acting suspicious by "constantly looking over his shoulder" as the officers approached, and "clutching his right hip" with his right hand as he walked. The officers also observed "a bulge protrude from the right side of his hip." As the officers "rolled up" next to the defendant, he "took off running [at a] full sprint." The

---

[3]St. Rec. Vol. 1 of 5, Bill of Information, 1/11/13.

officers ultimately apprehended the defendant at approximately 8:00 to 8:30 p.m. in a vacant lot in the 600 block of South Scott Street, which is about three blocks from where the robbery had occurred and one block away from where the officers first spotted the defendant. As Officer Abram was placing the defendant in handcuffs, a black and silver handgun fell from the defendant's pants leg. The defendant was found to be in possession of a loaded black and silver semi-automatic handgun, as well as approximately $103.00.

At around 10:00 p.m., that same evening, the defendant was in custody at the New Orleans Police Department First District. The defendant was wearing a gray hooded sweatshirt with "a small little Polo emblem," dark colored pants and tennis shoes.

The victim was notified by the NOPD and advised that they had a subject in custody and asked that he report to the First District Police Station on North Rampart Street; "[t]hey wanted [him] to come look at a possible suspect." The victim was admittedly "nervous" because he feared that "the guy who pretty much threatened [his] life would see [him]." After the victim calmed down he was place in the front passenger seat of a police vehicle. The officers then conducted a show-up or one-on-one identification procedure where a spotlight was shown on the defendant so that the defendant could not see the victim sitting in the front passenger seat of the police vehicle. At the time of the identification, the defendant was handcuffed and approximately fifteen to twenty feet away from the victim. At the victim's behest, the officer put the hood from the defendant's sweatshirt over the defendant's head; the victim identified the defendant with the hood of the sweatshirt both on and off of the defendant's head as the perpetrator with the gun. He also identified the gun as the weapon that the defendant had used to rob him. The victim identified in open court, both the defendant as the perpetrator who robbed him and the gun that he used in the robbery.

(footnote omitted) State v. Briley, 151 So.3d 633, 636–38 (La. App. 4th Cir. 2014); State

Record Volume 4 of 5, Louisiana Fourth Circuit Court of Appeal Opinion, 2013-KA-

1421, pp. 3–5, October 1, 2014.

At trial on April 24, 2013, Briley was found guilty of armed robbery (count one) by a jury and guilty of resisting an officer (count three) by the state trial judge.[4] That same day, Briley entered a guilty plea to the felon in possession of a weapon charge (count two).[5] At a June 17, 2013 hearing, the state trial court denied Briley's motion for new trial and post-verdict judgment of acquittal.[6] After waiver of legal delays, the court sentenced Briley concurrently to 50 years in prison on count one and 12 years in prison on count two, both without benefit of parole, probation or suspension of sentence.[7] The court also sentenced Briley to serve 90 days concurrently in parish prison on count three.

At a June 24, 2013 hearing, the state trial court adjudicated Briley a second felony offender as to count one, vacated the prior sentence and resentenced him to 60 years in prison as a multiple offender.[8]

On direct appeal, Briley's appointed counsel asserted two errors:[9] (1) The identification evidence was insufficient to support the verdict. (2) The state trial court

---

[4]St. Rec. Vol. 1 of 5, Trial Minutes, 4/24/13; St. Rec. Vol. 4 of 5, Trial Transcript, 4/24/1.

[5]St. Rec. Vol. 1 of 5, Plea Minutes, 4/24/13; Waiver of Rights-Plea of Guilty, 4/24/13.

[6]St. Rec. Vol. 4 of 5, Sentencing Transcript, p. 2, 6/17/13; St. Rec. Vol. 1 of 5, Motion for New Trial and for Post-Verdict Judgment of Acquittal, 4/30/13.

[7]St. Rec. Vol. 1 of 5, Sentencing Minutes, 6/17/13; Docket Entry, 6/17/13; St. Rec. Vol. 4 of 5, Sentencing Transcript, pp. 4–6, 6/17/13.

[8]St. Rec. Vol. 1 of 5, Multiple Bill Hearing Minutes, 6/24/13; Multiple Bill, (undated); St. Rec. Vol. 4 of 5, Multiple Bill Hearing Transcript, p. 7, 6/24/13.

[9]St. Rec. Vol. 4 of 5, Appeal Brief, 2013-KA-1421, 11/18/13; Supplemental Appeal Brief, 2013-KA-1421, 12/23/13.

abused its discretion when it denied the motion to suppress the identification and erred when it allowed out-of-court evidence that tainted the in-court identification. Briley filed a pro se supplemental brief successfully requesting a remand order to allow the state trial court to rule on his newly filed pro se motion for new trial based on the victims' affidavit that altered his trial testimony.[10]

At an April 24, 2014 hearing, the state trial court denied the motion for new trial after finding that the victim did not substantially change his testimony and that the affidavit was suspect based on Briley's threats and offer of a monetary bribe made to the victim.[11] Briley thereafter filed a pro se second supplemental appeal brief challenging the state court's ruling on the motion for new trial.[12]

On October 1, 2014, the Louisiana Fourth Circuit affirmed Briley's convictions finding the claims meritless.[13] However, the court found an error in the weapon enhancement on the multiple offender sentence, vacated the sentence as to count one and

---

[10]St. Rec. Vol. 4 of 5, Pro Se Supplemental Brief, 2013-KA-1421, 1/27/14; 4th Cir. Order, 2013-KA-1421, 2/3/14; St. Rec. Vol. 1 of 14, Motion for New Trial, 1/27/14 (dated 1/21/14); Notice of Information, 5/31/13.

[11]St. Rec. Vol. 4 of 5, Hearing Transcript, 4/24/14; St. Rec. Vol. 1 of 5, State's Opposition.

[12]St. Rec. Vol. 4 of 5, Pro Se Supplemental Brief, 2013-KA-1421, 6/11/14.

[13]Briley, 151 So.3d at 633; St. Rec. Vol. 4 of 5, 4th Cir. Opinion, 2013-KA-1421, 10/1/14.

remanded the matter for resentencing only as to count one.[14] Briley did not seek review of this ruling.

On January 8, 2015, the state trial court resentenced Briley on the armed robbery conviction (count one) to serve 45 years in prison without benefit of parole, probation or suspension of sentence and imposed an additional five years in prison as a firearm enhancement with both to be served consecutively to the other sentences and without benefit of parole, probation or suspension of sentence.[15] The court then vacated that sentence and resentenced Briley on count one as a second felony offender to 60 years in prison without benefit of parole, probation or suspension of sentence.

Briley's convictions and sentences became final thirty (30) days later, on Monday, February 9, 2015,[16] when he did not seek review of his direct appeal or the resentencing. See Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008) (citing Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)).

---

[14]Briley, 151 So.3d at 638; St. Rec. Vol. 4 of 5, 4th Cir. Opinion, 2013-KA-1421, pp. 6–7, 10/1/14.

[15]St. Rec. Vol. 1 of 5, Sentencing Minutes, 1/8/15.

[16]The thirtieth day was Saturday, February 7, 2015. The finality therefore fell on the next business day, Monday, February 9, 2015. See La. Code Crim. P. art. 13 (weekends and holidays not included in calculation when it would be the last day of the period); Fed. R. Civ. P. 6.

On October 1, 2015, Briley's former, retained trial counsel filed an application for post-conviction relief in the state trial court.[17] On October 27, 2015, Briley submitted a motion to stay consideration of the application to allow him time to seek documents in support of his claims.[18] On May 6, 2016, the state trial court denied Briley's request for production of documents and denied relief as to four of the seven post-conviction claims, finding that Briley's claims of insufficient evidence and error in the denial of the motions to suppress and for new trial were repetitive of claims addressed on direct appeal and barred from further review under La. Code Crim. P. art. 930.4.[19] The court also held that Briley's claim of excessive sentence was repetitive under La. Code Crim. P. art. 930.4 and an improper ground for post-conviction review under La. Code Crim. P. art. 930.3. The court granted Briley a stay until July 11, 2016, to allow him time to brief the remaining three claims of ineffective assistance of counsel, ineffective assistance of appellate counsel and defective multiple bill adjudication.

On July 5, 2016, Briley submitted another application and additional briefing addressing only one remaining claim of ineffective assistance of trial counsel, i.e., counsel lacked time to prepare for trial, only visited Briley twice before trial and failed

---

[17]St. Rec. Vol. 1 of 5, Docket Entry, 10/1/15.

[18]St. Rec. Vol. 1 of 5, Motion to Stay, 11/4/15 (dated 10/27/15).

[19]St. Rec. Vol. 1 of 5, Trial Court Ruling, 5/6/16.

to make objections during trial.[20] Briley specifically alleged that trial counsel was deficient on the following grounds: (1) Counsel failed to object to evidence of the identification during the show-up line-up. (2) Counsel failed to object to the victim's in-court identification. (3) Counsel failed to object to the absence of fingerprints on the handgun. (4) Counsel failed to object to the admissibility of the gun. (5) Counsel failed to object during the preliminary examination when no fingerprints were taken from the victim's wallet or cell phone. (6) Counsel failed to obtain the surveillance video from the Evergreen Motel. (7) Counsel failed to seek a continuance to locate and call Erin Hayden who allegedly was with Briley at the motel.

On December 28, 2016, the state trial court denied relief, finding that Briley abandoned the claims of ineffective assistance of appellate counsel and defective multiple offender adjudication had not been briefed. The court also found the remaining ineffective assistance of trial counsel claims meritless under Strickland v. Washington, 466 U.S. 668 (1984).

On March 29, 2017, the Louisiana Fourth Circuit denied Briley's writ application seeking review of the ineffective assistance of trial counsel claims.[21] On September 21,

_____

[20]St. Rec. Vol. 1 of 5, Application for Post-Conviction Relief, 12/19/16 (dated July 5, 2016); see Trial Court Ruling, 12/28/16 (acknowledging that the supplemental application was filed by Briley on July 5, 2016).

[21]St. Rec. Vol. 5 of 5, 4th Cir. Order, 2017-K-0086, 3/29/17; 4th Cir. Writ Application, 2017-K-86, dated 1/20/17.

2018, the Louisiana Supreme Court denied Briley's related writ for failure to show ineffective assistance of counsel under <u>Strickland</u>.[22]

## II.   FEDERAL HABEAS PETITION

On October 23, 2018, the clerk of this court filed Briley's petition for federal habeas corpus relief in which he asserts that he received ineffective assistance of trial counsel on the following grounds:[23] (1) Trial counsel failed to subpoena Erin Hayden, the alibi witness offered by petitioner. (2) Trial counsel failed adequately to prepare for trial. (3) Trial counsel failed timely to subpoena the surveillance video from the Evergreen Motel. (4) Trial counsel failed to make contemporaneous objections throughout the trial.

The State filed a response in opposition to Briley's federal petition conceding exhaustion and timeliness of the petition.[24] The State argues that Briley's federal habeas claims are meritless.

## III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

---

[22]<u>State ex rel. Briley v. State</u>, 252 So.3d 894 (La. 2018); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2017-KH-0982, 9/21/18; La. S. Ct. Writ Application, 17-KH-982, 6/12/17 (dated 4/26/17).

[23]Rec. Doc. No. 1.

[24]Rec. Doc. No. 14.

9

including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[25] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Briley's petition, which, for reasons discussed below, is deemed filed on October 30, 2018.[26] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419–20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and the record shows that Briley's federal habeas petition was timely filed, state court review of his claims was exhausted and none of his claims are in procedural default. Nevertheless, Briley is not entitled to relief on the claims asserted.

---

[25]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[26]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Briley's petition on November 5, 2018, when it was received. Briley dated his signature on the form petition on October 30, 2018. This is the earliest date appearing in the record on which Briley could have presented his pleadings to prison officials for mailing to a federal court.

IV.   <u>STANDARDS OF A MERITS REVIEW</u>

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. <u>Nobles</u>, 127 F.3d at 419–20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" <u>Penry v. Johnson</u>, 215 F.3d 504, 507 (5th Cir. 2000) (quoting <u>Miller v. Johnson</u>, 200 F.3d 274, 280–81 (5th Cir. 2000)), <u>aff'd in part, rev'd in part on other grounds</u>, 532 U.S. 782 (2001) (brackets in original); <u>Hill</u>, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412–13 (2000); Penry, 532 U.S. 782, 792–93 (2001) (citing Williams, 529 U.S. at 405–08); Hill, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." White v. Woodall, 572 U.S. 415, 427 (2014) (citing Harrington v. Richter, 562 U.S. 86, 103 (2011); Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" Id. at 426 (quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford v. Visciotti, 537 U.S. 19, 24–25 (2002)) (citations omitted; brackets in original). Rather,

under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." <u>Neal v. Puckett</u>, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. <u>Price</u>, 538 U.S. at 641 (quoting <u>Woodford</u>, 537 U.S. at 24–25); <u>Wright v. Quarterman</u>, 470 F.3d 581, 585 (5th Cir. 2006).

## V.    EFFECTIVE ASSISTANCE OF COUNSEL

Briley asserts that his counsel was ineffective for failing adequately to prepare for trial, subpoena a motel surveillance video, subpoena an alibi witness and make contemporaneous objections at trial. Briley asserted these claims during state court post-conviction review, and the state courts denied relief on these claims, finding that Briley failed to prove his claims under the <u>Strickland</u> standards.

In <u>Strickland</u>, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. <u>Strickland</u>, 466 U.S. at 687. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." <u>Id.</u> at 688. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694; <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' But it is not enough, under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); see Harrington, 562 U.S. at 112 (Strickland requires a "substantial" likelihood of a different result, not just a "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington, 562 U.S. at 105 (quoting Strickland, 466 U.S. at 690). The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

14

Id. at 105 (citations omitted).

Thus, scrutiny of counsel's performance under Section 2254(d) is "'doubly deferential.'" Cullen v. Pinholster, 563 U.S. 170, 190 (2011) (quoting Knowles, 556 U.S. at 123). This court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner. Id.; Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008); Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236–37; Clark v. Johnson, 227 F.3d 273, 282–83 (5th Cir. 2000). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997); Mann v. Scott, 41 F.3d 968, 983–84 (5th Cir. 1994)).

The issue of ineffective assistance of counsel is a mixed question of law and fact. Strickland, 466 U.S. at 698; Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010). Thus, under the AEDPA, this court must

determine whether the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court precedent.

1.      Subpoena the Alibi Witness

Briley claims that his counsel acted unprofessionally in failing to contact and call his alibi witness, Erin Hayden, who was with him at the Evergreen Motel on the night of the armed robbery. He argues that he was prejudiced as a result of counsel's failure to subpoena Hayden or seek a continuance to locate her to attest to his whereabouts on the night of the armed robbery.

The state trial court denied relief, finding that Briley presented no support for his assertion as to how Hayden would testify and no basis to find counsel's performance deficient. The Louisiana Supreme Court generally denied relief under Strickland.

It is not enough for Briley to allege that his counsel should have called Hayden as a defense witness. It is well settled that "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir. 2003) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)); Bray v. Quarterman, 265 F. App'x 296, 298 (5th Cir. 2008). To prevail on such a claim, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have

been favorable to a particular defense. <u>Day v. Quarterman</u>, 566 F.3d 527, 538 (5th Cir. 2009) (citing <u>Bray</u>, 265 F. App'x at 298).

Briley has identified Hayden as his alibi witness who allegedly was with him at the Evergreen Motel at the time of the armed robbery. Briley has not presented any evidence to support his claim that Hayden was available to testify or that she would testify favorably to him, as he claims. As noted by the state trial court, in the years since his arrest and conviction, Hayden did not come forward and Briley did not obtain an affidavit to support his claim that she would testify favorably for the defense.

In addition, Briley is factually incorrect in his claim that counsel failed to move for a continuance to locate Hayden. The motion for new trial filed by his counsel on April 30, 2013, was in part based on counsel's objection to the state trial court's denial of his request for the continuance for that purpose:[27]

> The Court was made aware of potential evidence which would create an alibi defense for Mr. Briley. Specifically, the fact that Mr. Briley was alleged to have been with Ms. Erin Hayden at a motel on Airline Drive, in Kenner, Louisiana, at the time of the alleged armed robbery. Moreover, the Court was informed on the record that defense counsel had been unable to contact Ms. Hayden. It is believed that Ms. Hayden would testify that Mr. Briley was with her at the time of the armed robbery. Moreover, Ms. Hayden is believed to be in possession of the registration card from the Motel. The Court was also advised that Mr. Briley's original counsel had subpoened the video surveillance footage from the motel, however, trial counsel was not in possession of any returns on that subpoena. Based upon this information, defense counsel moved for a continuance to allow time for investigation, which this Honarable Court denied. It is likely that this information would

---

[27]St. Rec. Vol. 1 of 5, Motion for New Trial, 4/30/13.

have exonerated Mr. Briley, and the denial of the continuance which would allow defense counsel to present this evidence was a prejudicial error.

Although the state trial court denied the motion for new trial, the representations confirm that Briley's counsel sought a continuance for the very purpose of finding Hayden and obtaining her testimony. This language further confirms that his counsel attempted to no avail before trial to locate Hayden. Thus, although he has provided a name, Briley has not provided information sufficient to prove deficient performance by his counsel or that counsel prejudiced the defense by failing to call the purported alibi witness, who could not be located and was not available to testify.

The state courts' denial of relief was not contrary to or an unreasonable application of Strickland. Briley is not entitled to relief on this claim.

2.    Subpoena the Surveillance Video

Briley claims that his original counsel prejudiced the defense by failing timely under state law to subpoena video surveillance from the Evergreen Motel to support his alibi defense. The state trial court denied relief on this claim, finding that Briley's counsel twice subpoenaed the video and that Briley failed to establish that a video existed or that it would provide evidence favorable to the defense. The Louisiana Supreme Court generally denied relief under Strickland.

18

The armed robbery and Briley's arrest occurred on November 27, 2012.[28] On December 19, 2012, while the matter was before the state magistrate court, Briley's retained counsel enrolled in the case and simultaneously filed a motion for subpoena duces tecum to obtain video surveillance from the Evergreen Motel.[29] The record does not include a return or other information about this subpoena.

On January 11, 2013, the felony charges against Briley were formally filed by bill of information, and he was appointed counsel.[30] Briley was arraigned on the charges on January 23, 2013.[31] On February 26, 2013, his appointed counsel sought and obtained a second subpoena duces tecum for the surveillance video.[32] The subpoena was served on the Evergreen Motel on March 8, 2013.[33] The state trial court also issued a summons to the Evergreen Motel for the return on the subpoena to be made on March 28, 2013.[34] The record does not indicate if a return was made that day or why a return could not be completed by the motel management. No video was referenced or presented at trial.

---

[28]St. Rec. Vol. 1 of 5, Bill of Information, 11/27/12.

[29]St. Rec. Vol. 1 of 5, Motion for Subpoena Duces Tecum, 12/19/12; Motion to Enroll, 12/19/12; Docket Entry, 12/19/12.

[30]St. Rec. Vol. 1 of 5, Bill of Information, 11/27/12.

[31]St. Rec. Vol. 1 of 5, Minute Entry, 1/23/13.

[32]St. Rec. Vol. 1 of 5, Subpoena Duces Tecum, 2/26/13; Minute Entry, 2/26/13.

[33]St. Rec. Vol. 1 of 5, Subpoena Duces Tecum, 2/26/13.

[34]St. Rec. Vol. 2 of 5, Summons to Appear, 3/5/13.

Briley argues that his original, retained counsel failed timely to apply for the subpoena under La. Code Crim. P. art. 521, which provides that pretrial motions must be filed within 15 days after arraignment or a date set by the court. Briley's counsel first requested the subpoena on December 19, 2012, which was several weeks before the bill of information was filed and more than a month before Briley was arraigned on the charges on January 23, 2013. His counsel, therefore, was not untimely in moving for the subpoena on December 19, 2012, especially considering that was the same day he enrolled in the case in magistrate court. His counsel could not have moved for the subpoena any sooner.

Furthermore, issuance of subpoenas is governed by La. Code Crim. P. art. 731, et seq., which does not have a deadline for filing except that it should be done in a reasonable amount of time to be served and returned before trial. Accord, State v. Landrum, No. 2017-KA-0307, 2018 WL 913161, at *5 (La. App. 1st Cir. Feb. 16, 2018). Briley's counsel requested the subpoena well before trial and was not untimely or unreasonable under Louisiana law.

In addition, Briley has not established that a video existed or that it would have benefited the defense. As noted by the state trial court, a court cannot assume or presume the existence of the video or its contents. His counsel twice tried to obtain the video by subpoena and cannot be deemed deficient in performance for failing to present evidence that may not exist and that cannot be obtained by reasonable and available means. The

record indicates that his retained and appointed counsel promptly attempted to obtain the video apparently to no avail. Under these circumstances, his counsel's unsuccessful efforts to obtain the video do not equate to deficient performance. The state courts' denial of relief was contrary to or an unreasonable application of Strickland. He is not entitled to relief on this claim.

3.   Prepare for Trial

Briley claims that his counsel did not have sufficient time to investigate and prepare after enrolling only 12 days before trial. The state trial court denied relief, noting that Briley's claim was conclusory and failed to identify any deficient performance resulting from the timing of counsel's enrollment. The Louisiana Supreme Court also found no showing of error under Strickland.

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." Druery v. Thaler, 647 F.3d 535, 541 (5th Cir. 2011) (quotation omitted) (emphasis added); accord Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998). A petitioner cannot show prejudice as to a claim that his counsel failed to prepare and investigate without specifying what further preparation and investigation would have shown. See Diaz v. Quarterman, 239 F. App'x 886, 890 (5th Cir. 2007) (quoting Strickland, 466 U.S. at 696) (some evidence is required to show that "'the decision reached would reasonably likely have been different'"). To prevail on such a

claim, petitioner must provide factual support showing what exculpatory evidence further investigation would have revealed. Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Moawad, 143 F.3d at 948; Davis v. Cain, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (citing Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002)).

As background, Briley's appointed counsel withdrew from the case on April 8, 2013, after she was notified that Briley had retained trial counsel on or about April 5, 2013.[35] Briley's trial was already scheduled for April 24, 2013.

As his sole ground for asserting lack of preparation, Briley points to his trial counsel's failure to subpoena his alleged alibi witness, a separate claim already addressed in this report and found meritless. The record reflects that trial counsel attempted to locate Hayden and was unable to contact her before trial. This was not due to lack of time or preparation.

Otherwise, Briley merely speculates that his counsel was unprepared and did not adequately investigate the case based solely on the length of his counsel's enrollment. He must present more than presumptive, conclusory assertions to establish ineffective assistance of counsel. Green v. Johnson, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."). Briley has identified no exculpatory

---

[35]St. Rec. Vol. 1 of 5, Motion to Withdraw, 4/8/13; Trial Court Order, 4/8/13.

22

evidence or favorable witness testimony that would have been discoverable through more pretrial investigation by counsel. Thus, he has not specified what exculpatory information, if anything, further preparation or investigation would have disclosed. This is not sufficient to establish a deficiency in counsel's performance. Moawad, 143 F.3d at 948.

The record demonstrates that Briley's counsel was well-versed to challenge the evidence presented by the State which established and linked Briley to the armed robbery. "If the facts adduced at trial point so overwhelmingly to the defendant's guilt that even the most competent attorney would be unlikely to have obtained an acquittal, then the defendant's ineffective assistance claim must fail." Jones v. Jones, 163 F.3d 285, 304 (5th Cir. 1998) (quoting Green v. Lynaugh, 868 F.2d 176, 177 (5th Cir. 1989)). Such is Briley's case.

Briley has failed to establish that his counsel was ineffective under Strickland. The state courts' denial of relief was not contrary to or an unreasonable application of Strickland. He is not entitled to relief on this claim.

4.    Objections During Trial

Briley generally claims that his counsel failed to lodge objections that could have preserved claims for review on appeal. The state trial court denied relief on this claim, finding that Briley failed to establish a basis for counsel to have objected. The Louisiana Supreme Court also denied relief citing Strickland.

In his federal petition, Briley points to no specific instances or appealable issues that should have prompted an objection by his counsel. Under Strickland, Briley must do more than merely state that his counsel stood silent without indicating what particular objections his counsel should have made at trial. See Moawad, 143 F.3d at 948; Green, 160 F.3d at 1042. Conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. Miller, 200 F.3d at 282.

The record demonstrates no objectionable questions or evidence presented by the State. Counsel is not ineffective for failing to urge a baseless objection. See Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to make futile motions or frivolous objections); Smith v. Puckett, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990) ("counsel is not required to make futile motions or objections."). Briley fails establish that his counsel's handling of the trial testimony and evidence was deficient or otherwise prejudicial to the defense.

Briley has not demonstrated that his counsel's actions fell below constitutional standards. The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of Strickland. Briley is not entitled to relief on this claim.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Yutico Briley's habeas corpus petition under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[36]

New Orleans, Louisiana, this ____11th____ day of June, 2019.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[36]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.